758 So.2d 814 (1999)
STATE of Louisiana
v.
Adonis BROOKS.
No. 98-KA-0693.
Court of Appeal of Louisiana, Fourth Circuit.
July 21, 1999.
Writ Denied February 25, 2000.
*815 Harry F. Connick, District Attorney, John Jerry Glas, Assistant District Attorney, New Orleans, for Plaintiff-Appellee State of Louisiana.
Douglas R. Elliott, Deutsch, Kerrigan & Stiles, New Orleans, for Defendant-Appellant Adonis Brooks.
Court composed of Chief Judge ROBERT J. KLEES, Judge STEVEN R. PLOTKIN, Judge JAMES F. McKAY, III.
KLEES, Chief Judge.
Defendant Adonis Brooks and codefendant Maurice Paige were charged by grand jury indictment on July 2, 1992 with one count each of armed robbery, a violation of La. R.S. 14:64 and second degree murder, a violation of La. R.S. 14:30.1.[1] Brooks pled not guilty at his July 13, 1992 arraignment. On February 11, 1993, the trial court granted defendant's motion to sever the offenses.[2] On March 15, 1993, the trial court reversed itself and denied the motion to sever the offenses. Following a joint trial on March 26-27, 1993, Brooks was found guilty as charged. On April 7, 1993, the trial court denied defendant's request for continuance in order to file a motion for new trial, and sentenced defendant to ninety-nine years at hard labor without benefits of parole, probation or suspension of sentence on the armed robbery count, and life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. On April 21, 1997, the trial court granted defendant's motion for an out of time appeal. On March 11, 1998, the trial court ruled that defendant's motion for new trial had already been denied.

FACTS
New Orleans Police Department Homicide Detective Dwight Deal testified that he investigated an armed robbery and homicide, which occurred within close proximity of each other on April 22, 1992. He stated that the robbery occurred in the 900 block of North Carrollton Avenue, the homicide, some three-tenths of a mile away in the 900 block of Harding Drive. As a result of leads developed in the case, defendant was arrested and charged with the two crimes.
Former New Orleans Police Department Homicide Detective Melvin Winins testified he investigated the murder of Jack Bartlett, which occurred in the 900 block of Harding Drive on April 22, 1992. Acting on a "Crimestoppers" tip, the day after the murder he displayed a photographic lineup to the victim of the armed robbery, Francelle Maunoir, who positively identified defendant as one of the individuals who had robbed her. She later identified defendant in a physical lineup, and identified Maurice Paige in a photographic lineup as the other individual who robbed her. Det. Winins said Alice Holloway, a Harding Drive resident, was unable to make an identification at the physical lineup. Det. Winins subsequently recovered clothing from the residence of defendant's mother, allegedly worn by defendant on the evening of the crimes.
*816 Francelle Maunoir testified that on the evening of April 22, 1992, she drove to visit a friend's apartment located at 940½ Carrollton Avenue, between Delgado and Dumaine Streets. Ms. Maunoir went outside to her friend's Jeep to get an audiotape at around 8:20 p.m. As she was searching for the tape case underneath the seat, she heard voices and straightened up to see two individuals walk past. She then bent down and got the tape case. As she was standing next to the Jeep, she saw the same two individuals come back toward her across the lawn of the residence. She tried to turn and make it back inside to safety, but one of the individuals pulled a gun and ordered her not to move or he'd kill her. She said this individual was wearing a red, white and blue striped polo shirt with long cutoff blue jean shorts and black tennis shoes. The second individual was wearing a white T-shirt which was black at the bottom. She said he was one and a half to two feet away from the gunman. He ordered her to give him what she had. She gave him two silver rings and a watch. He stuck his hand down inside of her shirt. He kept demanding that she give him her pocket book, and she realized he meant the tape case, which she gave him. He told her to get down, and when she squatted down he told her to lay on the ground or he'd kill her. She said she could just see her whole life flashing in front of her.
Ms. Maunoir said she would never forget the faces of the individuals who robbed her. She identified defendant as the gunman and Maurice Paige as the second individual. She also identified defendant in a physical lineup, which had been set up so that residents of Harding Drive could attend en masse. Ms. Maunoir identified a shirt and a pair of shorts at trial as looking like the ones worn by the gunman who robbed her. Over the objection of counsel for defendant, the State had defendant put on the clothes. She said that was the way she remembered the clothes on the day of the robbery.
Jenny Mast testified that Francelle Maunoir visited her at her apartment on the evening of April 22, 1992, went outside at approximately 8:20 p.m., and returned approximately four minutes later, saying that she had been robbed.
Linda Bartlett testified that she married Jack Bartlett in 1978, and they had three children ranging in age, at the time of trial, from three to nine. They lived at 1335 Moss Street at the time her husband was murdered, approximately one and one half blocks from the 900 block of Harding Drive. On the evening of April 22, 1992, her husband left on his bicycle to visit his mother and grandmother. Mrs. Bartlett identified a family photograph taken in April 1992, and another photo of the victim sitting in a chair reading a newspaper.
Alice Holloway testified that at approximately 8:45 p.m., on April 22, 1992, she heard loud voices outside her home, located at 972 Harding Drive. She saw people in the street, heard two pops, and saw a person on a bicycle fall over and two other individuals flee down Harding toward Dumaine Street. She said the only thing she could say was the two individuals who fled were black males, of average height and size. She subsequently went out to assist the person who had apparently been shot, and discovered it was Jack Bartlett. She attended the physical lineup but could not identify anyone.
Catherine Stoleberg testified that she resided at 977 Harding Drive at the time of the murder. She was inside of her home on April 22, 1992, shortly after 8:30 p.m., when she heard loud voices, and then a pop, followed by a second pop. She went to her door, but did not open it. She then heard someone say, "I got him." She could not state anything in particular about the voice, not even whether it was a black versus a white male. Ms. Stoleberg then looked out of her door, did not see anything, but heard laughter coming from the direction of Dumaine Street.
*817 Donna Reeve lived at 906 Harding Drive on April 22, 1992. That evening, she was in the front of her residence when she heard what she later realized were gunshots coming from her right. Not yet realizing that the sounds were gunshots, Ms. Reeve walked further toward the street in front of her residence and squatted down to pet her cats. At that point, she heard voices and footsteps coming from her right. She looked up to see two black males run past her to Dumaine Street, where they turned left, toward Bayou St. John. She described one individual as wearing a white shirt with blue stripes, faded blue denim cutoff shorts, and black tennis shoes. The only thing she could remember about the second individual was that he was wearing a white T-shirt. She identified the shirt seized from defendant's residence as being similar to the one worn by one of the individuals she had seen that evening. Her testimony also indicated that a pair of faded denim shorts in evidence were similar to the ones worn by that same individual. On cross examination she admitted that the striped shirt shown to her in court was kind of blue with a little purple in it.
Reginald Comeaux testified that he did not come to court of his own free will, but was subpoenaed and actually taken to court by police. He testified that he knew defendant from the area of Dumaine and N. Salcedo Streets, and that, a couple of days after the murder, on a Friday evening, he saw Maurice Paige, defendant, and two other individuals walking up the street. He overheard them laughing and joking, one saying, "You shot that man," and the other saying, "No, man, you shot that man." He said when he looked up, he heard Paige tell defendant that he shot the man.
Dr. Thomas Carson was qualified as an expert in the field of forensic pathology. Dr. Carson performed the autopsy on Jack Bartlett. He stated that Mr. Bartlett was shot once in the neck, with the bullet lacerating the left internal carotid artery. He said the left internal carotid artery supplies blood to the left side of the brain, and that a person with such a wound would only survive several minutes.
Albertine Beverly testified that she had known defendant in elementary school, and Maurice Paige for approximately one year. She said defendant and Paige were friends. She stated that, between 8:30 and 9:00 p.m. on the evening of April 22, 1992, she saw defendant and Paige running past the corner of Dumaine and N. Lopez Streets. She stated that defendant was wearing a blue striped polo shirt and some light colored shorts, while Paige had on a white T-shirt. She said she had seen defendant wearing these same clothes on two or three other occasions. She also said that Paige was carrying a gun in his hand. Ms. Beverly identified the striped polo shirt and cutoff jeans in evidence as those being worn by defendant when she saw him on the evening of April 22, 1992.
It was stipulated that New Orleans Police Officer Jim Gallager, assigned to the data systems section, if called to testify, would state that the first computer generated time called in under the item number of the armed robbery of Ms. Maunoir was 8:43 p.m.
New Orleans Police Officer L.J. Smith wrote the report on the armed robbery of Ms. Maunoir. She reported that the gunman was wearing a short-sleeved multicolored striped shirt, blue jean shorts to the knee and tennis shoes, while the second individual was reported to be wearing a white T-shirt.
John Turner, an acquaintance of Maurice Paige, testified that Paige confided in him that he had been involved in a crime. Paige told him that a friend urged Paige to come with him and make a hit. Paige said that both he and his unnamed friend, both armed with guns, robbed a white female. Paige said that, after robbing her, they encountered a white male on a bicycle, close to Bayou St. John, and he shot him. Paige told Mr. Turner that he had gotten *818 rid of the gun. Mr. Turner testified that he was then incarcerated, but that he had come to testify of his own free will and had made no deals with the prosecutors.
Det. Dwight Deal was recalled as a witness. He testified that he arrested defendant on April 22, 1992 for armed robbery, and said defendant was rebooked with Jack Bartlett's murder on April 29, 1992. He said defendant's height at the time of his arrest was listed as five foot eight inches, his weight, one hundred and forty-five pounds.
Defendant testified in his own behalf. He said that in April 1992 he was working in the kitchen of La Pavillion Hotel on an irregular schedule but always from 7:00 a.m. to 4:00 p.m. He said that after work he normally would go to his girlfriend's residence, where he would stay until around ten o-clock, when they would go pick up her mother in eastern New Orleans. He said he could not recall what he did on April 22, 1992. He said he learned on April 23, 1992 that police were looking for him, and, afraid, he went to stay with a cousin. He turned himself in on April 26, 1992. He did not turn himself in earlier because he had heard that police railroad people. He denied robbing Ms. Maunoir or killing Jack Bartlett.
On cross-examination, defendant admitted that he knew Maurice Paige from "the neighborhood," meaning, he said, the area of Dumaine and N. Salcedo and N. Lopez Streets. He said his daughter's mother lived in that neighborhood and Paige's girlfriend did also. However, defendant stated that he had never hung around with Paige, though he admitted that he went to that neighborhood on a daily basis and saw Paige every day. He also said he had shot dice with Paige. Defendant admitted that he knew Albertine Beverly, and that she knew Paige, but said that she never saw him and Paige together. He identified the jean shorts and shirt in evidence as belonging to his little sister. He denied ever having worn the shorts but admitted having worn the shirt as often as once a week. He admitted that Albertine Beverly's testimony was correct on this point. He denied ever having a gun or seeing Paige with a gun.

ERRORS PATENT AND ASSIGNMENT OF ERROR NO. 6
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant complains that the trial court erred in requiring him to put on for the jury, clothes allegedly worn by him during the commission of the crimes.
At the request of the State, defendant was asked to don the striped polo shirt and faded cutoff jean shorts belonging to his sister, which had been seized from defendant's mother's residence, and which had allegedly been worn by defendant during the robbery of Ms. Maunoir and the murder of Jack Bartlett.
During defense counsel's cross-examination of Det. Winins, who seized the clothing in question, Det. Winins was asked twice whether anyone had ever asked defendant to try on the jean shorts in evidence to "see if they fit him," "or see if they weren't too little or too big, or whether they fit him at allor anything like that." When the State raised the issue of defendant trying on the clothes, counsel for defendant objected, stating that the basis of her objection was that it violated defendant's Fifth Amendment right against self-incrimination. Counsel also argued that defendant's Sixth Amendment right of confrontation would be diminished once the victim viewed defendant in the clothing. Finally, defendant argued that the wearing of the jean shorts would not be relevant evidence unless defendant wore them so that they extended below his knee, as defense counsel alleged the victim had testified he had worn them. The trial court felt that defense counsel had opened the door to such evidence because of her questioning of Det. Winins. The trial *819 court also stated that it did not believe the Fifth Amendment covered the situation.
In his brief on appeal, defendant argues that, under La. C.E. art. 403, the trial court erred in not excluding the demonstration because the probative value was substantially outweighed by the danger of unfair prejudice as a new objection. La. C.E. art. 403 states in part that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Defendant does not argue any other ground in support of this assignment of error.
A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. La.C.Cr.P. art. 841(A); State v. Seals, 95-0305, p. 5 (La.11/25/96), 684 So.2d 368, 373, cert. denied, Seals v. Louisiana, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997). Not only does an objection have to be made, but La.C.Cr.P. art. 841(A) "requires a defendant to make known the grounds for his objection; and he is limited on appeal to those ground articulated at trial ...." State v. Buffington, 97-2423, p. 9 (La.App. 4 Cir. 2/17/99), 731 So.2d 340, quoting State v. Chisolm, 95-2028, p. 6 (La.App. 4 Cir. 3/12/97), 691 So.2d 251, 255, writ denied, 97-0938 (La.10/3/97), 701 So.2d 195.
Because counsel for defendant did not object to the ruling that defendant model the clothing on the ground that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice, he is precluded from arguing that ground on appeal.
There is no merit to this assignment of error.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
In these assignments of error, defendant complains that (1) the trial court erred in denying his motion for a new trial based on what he characterizes as newly discovered evidencethat a key State witness confessed under oath that he perjured himself at trial; and (2) that defendant's due process right to a fair trial was violated because of the State's failure to disclose a deal, or discussions of a deal, with a key prosecution witness.
At trial, John Turner testified that Maurice Paige confessed to him that he shot a white male on a bicycle near Bayou St. John, shortly after he and his unnamed accomplice robbed a white female. At the time of trial, Mr. Turner was incarcerated and awaiting trial for indecent behavior with a juvenile, which fact was brought out by the prosecutor during direct examination. It was also brought out that no deals had been made with Mr. Turner, but that he had come to testify of his own free will.
Following defendant's conviction, Mr. Turner filed a motion to quash his indictment on the grounds that he had made a deal with prosecutors in exchange for his testimony against Paige. At a hearing on the motion to quash, Mr. Turner stated, in a rambling discourse, that Orleans Parish Assistant District Attorney Roger Jordan had informed him that if he did not testify against Paige, Jordan would make sure that Turner would get nailed and receive the maximum penalty for the crime with which he was accused. He said Jordan told him that if he testified against Paige, Jordan would drop the charges. Mr. Turner also said that Mr. Jordan had given him checks in payment for his testimony. Roger Jordan, who prosecuted defendant and Paige, testified at the hearing, flatly denying Mr. Turner's allegations of threats, deal-making, and payments in exchange for testimony. He noted that Mr. Turner had given the same testimony against Paige in front of the grand jury, prior to his arrest for the charge of indecent behavior with a juvenile. Mr. Jordan did admit that after defendant's trial and conviction, he offered to inform the trial court in Mr. Turner's case of his cooperation.
The trial court denied Turner's motion to quash, apparently accepting the testimony *820 of Mr. Jordan, and finding Mr. Turner's testimony unbelievable. Later, when defendant obtained a transcript of this motion to quash hearing in Mr. Turner's case, and filed his motion for a new trial based on this claim, the trial court simply stated that the claim had already been handled and denied the motion, obviously referring to the motion to quash hearing where it found no merit to defendant's claims of deal-making. The court obviously found no new evidence existed because it found Mr. Turner's testimony unbelievable.
La.C.Cr.P. art. 851 provides that a new trial shall be granted on motion of defendant whenever, among other reasons:
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; ....
In State v. Cavalier, 96-3052 (La.10/31/97), 701 So.2d 949, the court stated:
A defendant seeking a new trial based on newly discovered evidence must establish four elements: (1) that the new evidence was discovered after trial; (2) that failure to discover the evidence before trial was not attributable to his lack of diligence; (3) that the evidence is material to the issues at trial; and (4) that the evidence is of such a nature that it would probably produce a different verdict in the event of retrial. State v. Hammons, 597 So.2d 990, 994 (La.1992); State v. Knapper, 555 So.2d 1335, 1339 (La.1990); State v. Prudholm, 446 So.2d 729, 735 (La.1984). In ruling on the motion, "[t]he trial judge's duty is not to weigh the evidence as though he were a jury determining guilt or innocence, rather his duty is the narrow one of ascertaining whether there is new material fit for a new jury's judgment." Prudholm, 446 So.2d at 736.
Newly discovered evidence affecting only a witness's credibility "ordinarily will not support a motion for a new trial, because new evidence which is `merely cumulative or impeaching' is not, according to the often-repeated statement of the courts, an adequate basis for the grant of a new trial." Mesarosh v. United States, 352 U.S. 1, 9, 77 S.Ct. 1, 5, 1 L.Ed.2d 1, 5 (1956). Nevertheless, the court possesses the discretion to grant a new trial when the witness's testimony is essentially uncorroborated and dispositive of the question of guilt or innocence and it "appears that had the impeaching evidence been introduced, it is likely that the jury would have reached a different result." United States v. Davila, 428 F.2d 465, 466 (9th Cir.1970); accord United States v.. Davis, 960 F.2d 820, 825 (9th Cir.), cert. denied, 506 U.S. 873, 113 S.Ct. 210, 121 L.Ed.2d 150 (1992); United States v. Taglia, 922 F.2d 413, 415-16 (7th Cir. 1991); United States v. Harpster, 759 F.Supp. 735, 738 (D.Kan.), aff'd 951 F.2d 1261 (10th Cir.1991); United States v. Lipowski, 423 F.Supp. 864, 867 (D.N.J. 1976); see also State v. Bryan, 398 So.2d 1019, 1021-22 (La.1980) (on rehearing). In making this determination, the court may assume that the jury "would have known that [the witness] had lied about the matter[.]" United States v. Stofsky, 527 F.2d 237, 246 (2nd Cir.1975), cert. denied, 429 U.S. 819, 97 S.Ct. 65, 50 L.Ed.2d 80 (1976).
96-3052 at pp. 3-4, 701 So.2d at 951-52.
"A trial court assessing the legal merits of such a motion is given considerable latitude in evaluating the reliability of the evidence and its impact on the verdict." State v. Payn, 92-0975, p. 4 (La.App. 4 Cir. 7/26/95), 659 So.2d 527, 529, vacated in part on other grounds, 95-2166 (La.1/26/96), 666 So.2d 661, citing State v. Humphrey, 445 So.2d 1155, 1159-60 (La. 1984). In State v. Clayton, 427 So.2d 827 (La.1982), the court stated:
Recantations of trial testimony should be looked upon with utmost suspicion. We have held specifically that a motion *821 for a new trial should not be granted on the basis of a recantation because it is tantamount to an admission of perjury which would destroy the credibility of the witness at a new trial. It is not an abuse of discretion on the part of the trial court to refuse to grant a motion urged on such a basis. (Citations omitted).
427 So.2d at 832-33.
Considering the incredible testimony of Mr. Turner at his motion to quash, it cannot be said that the trial court abused its discretion in denying defendant's motion for a new trial. Likewise, since a different trial court essentially made a factual finding that there was no deal, there is no merit to defendant's claim that his due process right to a fair trial was violated because the State allegedly withheld evidence of such a deal-there was no deal.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 4
In this assignment of error, defendant argues that the trial court erred in denying his motion to sever.
Jointly indicted defendants shall be tried jointly unless either (1) the state elects to try them separately; or, (2) on motion of defendant, the court, after contradictory hearing, is satisfied that justice requires a severance. La.C.Cr.P. art. 704. A defendant is required to show by convincing evidence that a severance is or was required. State v. Tate, 95-0929, p. 2 (La. App. 4 Cir. 6/7/95), 657 So.2d 567, 568, writ denied, 95-1726 (La.9/1/95), 658 So.2d 1262. Whether to grant or deny a severance is within the sound discretion of the trial court, and the court's decision will not be disturbed absent clear abuse of that discretion. State v. August, 96-2777, p. 7, (La.App. 4 Cir. 9/16/98), 719 So.2d 536, 541, writ denied, 98-2523 (La.1/5/99), 736 So.2d 206; State v. Morris, 94-1767, pp. 3-4 (La.App. 4 Cir. 2/15/96), 669 So.2d 1271, 1273.
Defendant argues that he was prejudiced by the testimony of John Turner, a former acquaintance of Maurice Paige, who testified that Paige confessed to him that he and an unnamed accomplice had robbed a white lady and then he had shot a white male on a bicycle.
In Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the defendant was implicated in a robbery by the confession of his codefendant, which was introduced into evidence. The codefendant did not testify at the joint trial. Thus, the court held that the admission of the codefendant's statement had deprived the defendant of his rights under the confrontation clause of the Sixth Amendment.
Defendant claims Bruton is applicable to the facts of this case. The State maintains that, because Mr. Turner's testimony did not mention defendant's name, Bruton does not apply. Defendant cites the recent case of Gray v. Maryland, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), wherein the Supreme Court held that the introduction of a codefendant's redacted confession fell within Bruton's protective rule. In Gray, the codefendant's written statement had been redacted to substitute blank spaces for the defendant's name in three places. A witness who read the statement to the jury used the word "deleted" to denote the blank spaces. There was also testimony that the defendant had been arrested based on the codefendant's statement, which would naturally lead the jury to conclude that some part of the statement inculpated the defendant. The court concluded that a juror somewhat familiar with criminal law would know immediately that the blank referred to the defendant, while one unfamiliar with the law, left wondering who the blank referred to, would find a too obvious answer by simply looking toward the defense table. The court stated that the obvious deletion would call attention to the removed name, encourage speculation, and might overemphasize the importance of the confession's accusation once the jurors *822 solved the mystery. The court believed that a statement of a codefendant redacted to leave a blank or some other similarly obvious alteration still operated to point the finger at the defendant.
In illustrating the difference between an unacceptable reference to an accomplice from an acceptable reference, the Gray court singled out one question and answer between police and the codefendant:
"Question: Who was in the group that beat [the victim]?
"Answer: Me, deleted, deleted, and a few other guys."
523 U.S. at 196, 118 S.Ct. at 1157.
Giving an example of an acceptable answer, the court stated:
Why could the witness [who read the statement to the jury] not, instead, have said:
"Question: Who was in the group that beat [the victim]?
"Answer: Me and a few other guys."
Id.
Thus, the Gray court put its stamp of approval on the second answer, which made it clear that the codefendant had accomplices, but did not call the jury's attention to an obvious redaction. In the instant case, in relating the substance of Paige's statements to him, Mr. Turner said nothing directly referring to defendant, nor anything from which it could possibly be inferred that defendant was Paige's accomplice. Mr. Turner related that Paige simply referred to his accomplice as his "friend." His testimony about Paige's statement comports with the acceptable example used by the court in Gray.
Under Gray, the testimony by John Turner concerning the substance of statements made to him by Maurice Paige, in which Paige referred to an accomplice, did not fall within Bruton's protective rule. Accordingly, defendant has failed to show that the trial court abused its discretion in denying his motion to sever defendants.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 5
In this final assignment of error, defendant argues that the trial court erred in allowing into evidence a photograph of the murder victim and his family.
The State presented to Linda Bartlett, the murder victim's wife, a photograph which she identified as one taken within a few weeks prior to her husband's murder. The photograph depicted Jack Bartlett, Linda, and their three children. Defense counsel objected to the photograph. On appeal, he claims the trial court erred in admitting it because it was not relevant, and even if so, its probative value was substantially outweighed by the danger of unfair prejudice.
In State v. Johnson, 94-0236 (La.App. 4 Cir. 3/16/95), 652 So.2d 1061, writ denied, 95-1752 (La.2/21/97), 688 So.2d 524, the court set forth the general rules applicable to photographic evidence as follows:
Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place, or thing depicted, are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984); State v. Hartman, 388 So.2d 688 (La.1980). The test of admissibility is whether the probative value of the photograph outweighs the possible prejudice which might result from its display to the jury. State v. Moore, 419 So.2d 963 (La.1982); State v. Jones, 381 So.2d 416 (La.1980). Determining the proper use of photographs at trial is generally within the sound discretion of the trial judge, who can best decide whether they serve a proper place in the jury's enlightenment and its ruling in this respect will not be disturbed in the absence of an abuse of discretion. State v. Kelly, 362 So.2d 1071 (La.1978), cert. denied, 439 U.S. 1118, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979).
94-0236 at pp. 7-8, 652 So.2d at 1067, see also La. C.E. arts. 402, 403.
*823 La. C.E. art. 403 allows a court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice as used in that article means that the offered evidence has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." 1997 Authors' Notes to La. C.E. art. 403.
Defendant does not argue that Linda Bartlett's appearance as a witness was improper in any way. The photograph, depicting Linda Bartlett with the victim, was minimally relevant in that it tended to confirm her identity. Defendant admits that a photograph of the victim would have been admissible. Thus, the photograph is admissible in at least two respects. While photographs of the victim's three children may have been irrelevant, it strains logic to suggest that a rational juror would be so moved by this photograph that he or she would return a guilty verdict because the victim had three children. Therefore, it cannot be said that the trial court abused its discretion in implicitly finding that the probative value of this photograph was not substantially outweighed by the danger of unfair prejudice.
Even assuming that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, and that the trial court erred in admitting it, it was harmless error. That is, the guilty verdict rendered in this case was surely unattributable to such error. La. C.Cr.P. art. 921; State v. Everidge, 96-2665, p. 8 (La.12/2/97), 702 So.2d 680, 685.
There is no merit to this assignment of error.
For the foregoing reasons, the convictions and sentences of defendant Adonis Brooks are hereby affirmed.
AFFIRMED.
NOTES
[1] Maurice Paige was tried with defendant and found guilty as charged on both counts. This court affirmed Paige's conviction on appeal, but vacated his sentence and remanded for resentencing. State v. Paige, 94-0277 (La. App. 4 Cir. 11/30/94), 646 So.2d 534. The Louisiana Supreme Court denied writs. State v. Paige, 94-3100 (La.4/28/95), 653 So.2d 589.
[2] The State's application for writs was denied by this court. State v. Brooks, unpub., 93-0312 (La.App. 4 Cir.1993). The Louisiana Supreme Court denied writs. State v. Brooks, 93-0414 (La.1993).