779 So.2d 30 (2001)
STATE of Louisiana,
v.
Dwight BRISCOE.
No. 99-KA-1841.
Court of Appeal of Louisiana, Fourth Circuit.
January 17, 2001.
*33 Harry F. Connick, District Attorney, Nicole Brasseaux Barron, Assistant D. A., New Orleans, LA, Counsel for Plaintiff/Appellant.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge ARMSTRONG, Judge PLOTKIN and Judge MURRAY.
ARMSTRONG, Judge.

STATEMENT OF THE CASE
The defendant, Dwight Briscoe, was charged by bill of information on July 9, 1998 with possession of cocaine, a violation of La. R.S. 40:967(C).[1] At his arraignment on July 27, 1998, he entered a plea of not guilty. The trial court denied the defendant's motion to suppress the evidence on August 28, 1998. Following trial by a six person jury on November 5, 1998, the defendant was found guilty of attempted possession of cocaine. On November 20, 1998, the defendant was sentenced to thirty months at hard labor. Pursuant to a habitual offender bill of information filed by the State, the trial court adjudicated the defendant a third-felony habitual offender, vacated the previously imposed sentence, and sentenced the defendant to life imprisonment at hard labor, with credit for time served, without benefit of parole, probation or suspension of sentence. The trial court denied the defendant's motion to reconsider sentence, and granted the defendant's motion for appeal.
Defense counsel asserts four assignments of error. The defendant, in his pro se brief, assigns two errors.

FACTS
Karen Lewis Holmes, a criminalist with the New Orleans Police Department, was qualified by stipulation as an expert in the analysis of controlled dangerous substances. Ms. Holmes testified that a white compressed substance under item number G-124298 tested positive for cocaine.
New Orleans Police Sergeant Steven Imbraguglio testified that at approximately 5:40 p.m. on July 1, 1998, he and his fellow plainclothes officer, Harry O'Neal, were in an unmarked vehicle conducting a surveillance of a residence at 8837 Cohn Street, when the defendant pedaled up on a bicycle. The defendant laid his bicycle on the sidewalk, went through a gate to the residence, and knocked on the door. A female answered the door and engaged in a hand-to-hand exchange with the defendant. Sgt. Imbraguglio said the officers then decided to stop the defendant. The defendant saw the officers while he was still on the steps of the residence, discarded a plastic bag, and attempted to flee before being apprehended. Sgt. Imbraguglio said the plastic bag contained crack cocaine. He testified on cross examination that the officers were approximately one hundred feet away from the residence under surveillance.
New Orleans Police Officer Harry O'Neal testified similarly to Sgt. Imbraguglio. *34 He saw the defendant give something to a female inside of the residence, and then watched as the female handed the defendant something in return. Officer O'Neal believed he had witnessed a drug transaction. Officer O'Neal said he uses a pair of binoculars when conducting surveillances, and believed he was using them when he observed the exchange in the instant case. He said he saw the plastic bag fall to the steps when the defendant dropped it, and he retrieved that same object, which contained cocaine. Officer O'Neal identified the cocaine in evidence as the same cocaine he seized that day.
Shavonnie Henderson testified that on July 1, 1998, she resided at 8834 Cohn Street. She and her daughter were standing on the corner of General Ogden and Cohn Streets when she observed the defendant approach 8837 Cohn Street on a bicycle. Ms. Henderson said the defendant knocked on the door of 8837 Cohn Street, but no one answered. As the defendant walked out of the gate, an unmarked police car made a U-turn and pulled up next to the defendant, while a marked police car approached from the opposite direction. The defendant jumped off his bicycle with his hands up. Ms. Henderson testified on cross examination that the officers from the marked police unit wept into the yard of the residence, while one of the plainclothes officers knocked on the door and spoke to Cherrika Landry, who resided there. She said the officer from the unmarked car looked around the yard, but she did not see him pick up anything.
Jacqueline Shelly testified that she was standing on a street corner between 5:30 and 6:00 p.m. on July 1, 1998, when she saw the defendant riding his bicycle in the 8800 block of Cohn Street. He went into a yard, where she previously had seen him working on a car. The defendant knocked on the door of the residence there, but left when no one answered. One unmarked and one marked police car drove up, from opposite directions, and officers stopped the defendant and handcuffed him. The officers knocked on the door of the residence, and the female occupant opened the door. The officers entered the residence, and later took the defendant inside. Ms. Shelly testified that she never saw the officer who went into the yard pick up anything there. She conceded on cross examination that someone could have come to the door when the defendant knocked on it, but she did not see anyone. She said police brought guns and drugs out of the residence. The prosecutor exhibited some guns to the witness, but she said she did not know if they were the same ones she had seen that day.
The defendant testified that on the evening in question he went to a residence to work on a car, and left when no one answered the door. As he was beginning to get back on his bicycle, the police arrived. The defendant stated that Officer O'Neal had arrested him in 1997, but that the trial court had thrown out the case after finding that Officer O'Neal had "put marked money" on him. The defendant said every time he saw Officer O'Neal after that, the officer threatened that he was going to get him. The defendant said he was not in possession of cocaine or any of the guns or weapons or other things recovered by police. He said police took a rock of crack cocaine out of a bag of cocaine the female resident had in the residence. He testified that Officer O'Neal was looking around the yard, but did not pick up anything there. The defendant admitted two prior convictions.
Officer Harry O'Neal testified on rebuttal that he previously had arrested the defendant on two occasions. One arrest resulted in a conviction. The second resulted in a not guilty verdict. He said the residence at 8837 Cohn Street was the target of his and Sgt. Imbraguglio's investigation. Officer O'Neal identified drugs seized from the residence, and said the rock of cocaine the defendant discarded was packaged the same way as those *35 rocks. He said the officers seized two AK 47 firearms, along with assorted drug paraphernalia.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1

PRO SE ASSIGNMENT OF ERROR NO. 1
By this assignment of error and in his pro se brief, the defendant claims the trial court erred in admitting irrelevant evidence consisting of two AK 47 assault rifles, boxes of ammunition for the guns, drug paraphernalia, two plastic bags containing a total of forty pieces of crack cocaine, and several bags of powdered cocaine, all seized from the residence of Cherrika Landry.
Defense counsel objected to the introduction of the guns, drugs and drug paraphernalia seized from Ms. Landry's residence at the time the State introduced this evidence after presenting its rebuttal witness. However, counsel stated no ground for his objection. La.C.Cr.P. art. 841(A) requires that a defendant make known the grounds for his objection, and he is limited on appeal to those grounds articulated at trial. State v. Brooks, 98-0693, p. 9 (La. App. 4 Cir. 7/21/99), 758 So.2d 814, 819, writ denied, 1999-2519 (La.2/25/00), 755 So.2d 247; see also State v. Richards, 99-0067, p. 4 (La.9/17/99), 750 So.2d 940, 942 ("An objection stating no basis presents nothing for this court to review"), quoting State v. Dupar, 353 So.2d 272, 273 (La. 1977). Because defense counsel gave no basis for his objection, the defendant is barred from raising this issue on appeal.
Even assuming that the ground of the defendant's objection was so obvious that it need not have been statedirrelevance the defendant suffered no prejudice by the trial court's admission of the physical evidence. Prior to the introduction of the evidence there had been extensive testimony concerning the firearms and other contraband by two defense witnesses, including the defendant, and by Officer O'Neal on rebuttal, all without objection from defense counsel. None of the State's witnesses in its case in chief suggested in any way that anyone other than the defendant had been arrested that day, or that any contraband had been recovered besides the one rock of crack cocaine the defendant allegedly discarded. The first indication of this evidence was defense witness Jacqueline Shelly's testimony on cross examination that police went into the residence and brought out the occupant, along with a lot of "stuff." Queried as to what kind of "stuff," she said drugs and guns. Defense counsel did not object to this line of questioning by the prosecutor. Then the defendant testified on direct examination that the guns and "stuff" had not been in his possession. Defense counsel asked the defendant if he had ever seen the weapons the State had "introduced," and the defendant replied that he had not. The defendant later stated during direct examination that police took him into the residence and charged him with possession of a rock of crack cocaine from the female resident's "package... of forty-five rocks." The defendant also specifically mentioned "two assault rifles." On rebuttal, Officer O'Neal testified without defense objection concerning the two loaded AK 47s, drugs and drug paraphernalia found in the residence, again without any objection from defense counsel. On cross examination, defense counsel questioned Officer O'Neal as to whether the defendant had been charged in connection with any drugs, paraphernalia or firearms seized inside of the residence. Considering that defense counsel allowed all of this testimony concerning the firearms and contraband, it cannot be said that the defendant was prejudiced by the routine admission of the physical evidence.
There is no merit to this assignment of error.

*36 ASSIGNMENT OF ERROR NO. 2

By this assignment of error, the defendant claims the trial court erred in adjudicating him a third-felony habitual offender, as the guilty plea from one of his predicate convictions was not entered knowingly and voluntarily.
La. R.S. 15:529.1(D)(1)(b) provides:
Except as otherwise provided in this Subsection, the district attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. The presumption of regularity of judgment shall be sufficient to meet the original burden of proof. If the person claims that any conviction or adjudication of delinquency alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the prosecutor. A person claiming that a conviction or adjudication of delinquency alleged in the information was obtained in violation of the Constitutions of Louisiana or of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof, by a preponderance of the evidence, on any issue of fact raised by the response. Any challenge to a previous conviction or adjudication of delinquency which is not made before sentence is imposed may not thereafter be raised to attack the sentence.
An oral objection is sufficient to preserve objection that trial court erred in adjudicating the defendant a habitual offender on the ground that a predicate conviction was based on an invalid guilty plea. State v. Alexander, 98-1377, p. 4 (La.App. 4 Cir. 2/16/00), 753 So.2d 933, 937.
In the instant case, defense counsel objected to the introduction of the evidence produced by the State as to the two predicate convictions, alluding to the possibility of collaterally attacking the guilty pleas on appeal. It cannot be said that this action by defense counsel "set forth his claim, and the factual basis therefor, with particularity" as required by La. R.S. 15:529.1(D)(1)(b). Accordingly, the defendant cannot raise this issue on appeal.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, the defendant claims that his counsel was ineffective in failing to attack the State's evidence presented at the habitual offender proceeding pertaining to his 1995 conviction for possession of cocaine, and thus preserve the issue for appeal.
"As a general rule, claims of ineffective assistance of counsel are more properly raised by application for post conviction relief in the trial court where a full evidentiary hearing may be conducted if warranted." State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802, cert. denied, Howard v. Louisiana, 528 U.S. 974, 120 S.Ct. 420, 145 L.Ed.2d 328 (1999). However, where the record is sufficient, the claims may be addressed on appeal. State v. Wessinger, 98-1234, p. 43 (La.5/28/99), 736 So.2d 162, 195, cert. denied, Wessinger v. Louisiana, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999); State v. Bordes, 98-0086, p. 7 (La. App. 4 Cir. 6/16/99), 738 So.2d 143, 147. Ineffective assistance of counsel claims are reviewed under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Brooks, 94-2438, p. 6 (La.10/16/95), 661 So.2d 1333, 1337 (on rehearing); State v. Robinson, 98-1606, p. 10 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 126. In order to prevail, the defendant must show both that: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficiency. Brooks, supra; State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel's performance is ineffective when it is shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland at 686, 104 S.Ct. at 2064; State v. Ash, 97-2061, p. 9 (La.App. 4 Cir. 2/10/99), 729 So.2d 664, 669, writ denied, 99-0721 *37 (La.7/2/99), 747 So.2d 15. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance the result of the proceeding would have been different; "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, at 693, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236, writ denied, XXXX-XXXX (La.1/7/00), 752 So.2d 175.
Because the record contains the documentation produced by the State at the habitual offender proceeding, this ineffectiveness of counsel claim may be resolved on appeal.
In State v. Alexander, 98-1377 (La.App. 4 Cir. 2/16/00), 753 So.2d 933, this court stated:
LSA R.S. 15:529.1 D(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the Supreme Court stated:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and his right to confront his accusers. If the State introduces anything less than the "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that the defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. (footnotes omitted).
98-1377 at pp. 5-6, 753 So.2d at 937.
In this case, to prove the defendant's 1995 conviction for possession of cocaine, in case number 375-548 "H", the State introduced, among other documents, a copy of a waiver of constitutional rights/ plea of guilty form signed and initialed by the defendant, indicating that he understood the nature of the charge against him, as well as his Boykin rights, and was freely and voluntarily waiving those rights and pleading guilty as charged in exchange for a sentence of one year at hard labor with credit for time served. The State also produced a minute entry reflecting that the defendants (the defendant and his codefendant) were present with their respective counsel when their guilty pleas were taken. The minute entry specifically states that the court interrogated "each defendant as to their Constitutional Rights*." The asterisk refers to a separate paragraph below the first paragraph, which purportedly sets forth the Boykin rights each defendant was advised of and waived. However, the second paragraph only refers to "defendant" in the singular, and the defendant argues that for this reason, the minute entry does not show that he was advised of his Boykin rights by the court, and/or that he understood *38 those rights before waiving them and pleading guilty. The defendant does not attack the "boilerplate" nature of the second paragraph, thereby implicitly conceding that if it simply referred to defendants, instead of defendant, it would suffice. However, the second paragraph must be read together with the first paragraph, which states that the trial court interrogated "each defendant" as to his rights. The obvious purpose of the second paragraph is to set forth those rights as to which the trial court interrogated each defendant. The minute entry is not affirmative evidence showing an infringement of the defendant's rights or a procedural irregularity in the taking of the guilty plea in case number 375-548 "H." In fact, this evidence establishes that the defendant pleaded guilty only after he was advised of his Boykin rights and knowingly waived them. Thus, it cannot be said that trial counsel's failure to attack the prior guilty plea at the trial court level on this ground prejudiced him.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 4

PRO SE ASSIGNMENT OF ERROR NO. 2
By this assignment of error and in his pro se brief, the defendant claims that the sentence of life imprisonment without the benefit of probation, parole or suspension of sentence is unconstitutionally excessive.[2]
The defendant received the mandatory sentence pursuant to La. R.S. 15:529.1(A)(1)(b)(ii) as a third felony habitual offender because he had three felony convictions, and one, his 1993 felony conviction, was for a possession of cocaine with intent to distribute, a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years.
Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906 at pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, writ denied, 95-3010, 669 So.2d 1223 (La. 3/22/96). There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. A defendant must clearly and convincingly show that the mandatory minimum sentence under the Habitual Offender Law is unconstitutionally excessive. Johnson, 97-1906 at p. 11, 709 So.2d at 678. "Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." Johnson, 97-1906 at p. 9, 709 So.2d at 677.
In the instant case, the defendant argues that the trial court failed to give reasons for sentencing as required by La.C.Cr.P. art. 894.1. However, the purpose underlying La.C.Cr.P. art. 894.1 is to provide an explanation for a particular sentence in those cases where the trial court is given discretion to choose a sentence tailored to the offender's circumstances from within a legislatively-provided *39 sentencing range; thus, when the trial court does not have to choose a sentence from within a given range, it complies with La.C.Cr.P. art. 894.1 when it informs the defendant he is receiving the statutorily mandated sentence. State v. Burns, 97-1553, p. 7 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, 1018, writ denied, 98-3054 La. 4/1/99, 741 So.2d 1282. Here, the trial court adequately advised the defendant of the statutory reason for his sentence.
In State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, the Louisiana Supreme Court reiterated its holding from Johnson, supra, that in order to rebut the presumption that the mandatory minimum sentence provided by the Habitual Offender Law is constitutional, a defendant must clearly and convincingly show that:
[h]e is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Lindsey, 99-3256 at p. 5, 770 So.2d at 343 (quoting Johnson 709 So.2d at 676, citing State v. Young, 94-1636 at pp. 5-6 (La. App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J. concurring)).
The court reiterated its holding in Johnson that while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason for declaring such a sentence excessive. As the court recognized, the defendant's history of violent or non-violent offenses has already been taken into account by the legislature in setting the sentences under the Habitual Offender Law for third and fourth-felony offenders, which punishes those third and fourth offenders with a history of violent offenses more severely than those with a history of non-violent offenses. Id.
Similarly, in the instant case, the fact that defendant's three offenses are nonviolent drug offensesattempted possession, possession and possession with intent to distribute cocaineis not sufficient alone to declare his sentence excessive. The legislature determined that any third-felony offender with one conviction for a drug offense such as possession with intent to distribute cocaine be sentenced to life imprisonment at hard labor. As the court stated in Lindsey, again reiterating its holding in Johnson, the goals of the Habitual Offender Law are to deter and punish recidivism, and it is not a court's role to question the wisdom of the legislature in requiring enhanced punishments for habitual offenders, but rather to determine whether the particular defendant has proven by clear and convincing evidence that the minimum sentence is so excessive in his case that it violates Louisiana's constitution.
In Burns, this court vacated the life sentence of a fourth felony habitual offender sentenced pursuant to La. R.S. 15:529.1(A)(1)(c)(ii)essentially the same provision applicable in the instant case, except it applies to fourth-felony offenders after his conviction for distribution of one rock of crack cocaine. This court found that, on the facts pertaining to that defendant, it was "unable to conclude that this life sentence is not excessive under the constitutional standard." 97-1553 at p. 11, 723 So.2d at 1020.
The defendant in Burns was observed by police selling one rock of crack cocaine to a third person. When arrested, the defendant was in possession of two more rocks and fifty-seven dollars. The defendant testified at trial that he was addicted to cocaine. Noting that two of the defendant's prior convictions were for possession of cocaine, this court concluded, "thus it is safe to assume he deals to support his habit," 97-1553 at p. 9, 723 So.2d at 1019. The defendant was twenty-five years old, and this court felt that the defendant was "young enough to be rehabilitated." This *40 court noted that a sentence less than life would "afford him the opportunity to partake in self-improvement classes while incarcerated and the possibility of a productive future." Id. The defendant's father testified at trial, stating that the defendant was well liked in the community and would go out of his way to help anyone. Though recognizing that the simple fact that none of the defendant's felonies were non-violent was insufficient alone to override the legislatively designated sentence under the Habitual Offender Law, this court cited Johnson, supra, for the proposition that this fact should not be discounted. This court also noted that there were no allegations that the defendant ever possessed a dangerous weapon. Finally, the court noted that the defendant had difficulties with memory regarding time and place, attributing the problems to a previous gunshot wound to the head. The court noted that this "surely must affect [the defendant's] ability to function in the same manner as someone who has not been shot in the head." 97-1553 at p. 10, 723 So.2d at 1020. The court also cited two economic impact considerations that the defendant would never be a productive taxpayer in prison, and that life imprisonment imposes an undue burden on taxpayers of the state who must feed, house, and clothe the defendant for life, and provide geriatric care in later years.
In State v. Finch, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, writs denied, 99-1240 (La.10/8/99), 750 So.2d 179 and 99-1300 (La. 10/8/99), 750 So.2d 963, this court declined to extend Burns to a case where there was no evidence that the defendant was driven by his addiction to sell drugs to support his drug habit, and where the record was devoid of any testimony suggesting that the defendant might possess any redeeming virtues. This court stated:
Where a minimum sentence does not transcend constitutional limits, it may not be reformed by this Court merely because it seems harsh. This Court does not have the authority to second guess the legislature concerning the wisdom of minimum sentencing on any ground other than that of constitutional excessiveness.
Id. at p. 13, 730 So.2d at 1027-28.
In State v. Long, 97-2434 (La.App. 4 Cir. 8/25/99), 744 So.2d 143, writ denied, 1999-2780 (La.3/17/00), 756 So.2d 1140, this court affirmed a mandatory life sentence imposed on a third-felony habitual offender convicted of distribution of marijuana and cocaine, who had prior convictions for distribution of false drugs and possession of cocaine. There was no evidence introduced at trial to indicate that the defendant was addicted to drugs, as there had been in Burns, and the record revealed no testimony concerning any redeeming virtues the defendant might have possessed, as there had been in Burns. The court held that the defendant had failed to meet his burden of showing by clear and convincing evidence that his sentence was unconstitutionally excessive, as required by Johnson, supra.
More recently, in State v. Stevenson, 99-2824 (La.App. 4 Cir. 3/15/00), 757 So.2d 872, writ denied, XXXX-XXXX (La.11/17/00), 773 So.2d 734 this court reversed the mandatory life sentence imposed upon a third-felony habitual offender, likening it to Burns. In Stevenson, the defendant was a thirty-eight year old mother convicted of distribution of one rock of crack cocaine, with prior convictions for felony theft and simple burglary of an inhabited dwelling. No drugs were found on her person after her arrest for distribution of the cocaine. The court noted that, like the defendant in Burns, the defendant in Stevenson had no record of violent crimes, nor was there any evidence she had ever used a dangerous weapon. The court conceded that, unlike in Burns, the defendant in Stevenson did not testify that she was a drug addict, and no one testified in her behalf. However, this court noted that the trial court had ordered the defendant to report to a substance program, and inferred the *41 possibility that she, like the defendant in Burns, was a drug addict who sold the cocaine to support her own habit. The court concluded by stating:
In the case at bar, the life sentence imposed on this third offender may not be proportionate to the crime for which she was convicted, namely the selling of one rock of cocaine. Defendant does not have a violent history and does not appear to have significant ties to drug distributors. She may have been supporting a drug addiction with the transaction; she is fairly young, and she is a mother. It must be remembered that, if defendant does receive a life sentence, any hope for her rehabilitation will vanish, and "the taxpayers of the state [will have to] feed, house, and clothe [her] for life." State v. Hayes, 97-1526 (La.App. 1 Cir. 6/25/99), 739 So.2d 301, 303. On the other hand, it cannot be forgotten that defendant has had two prior chances to prove herself capable of rehabilitation and has failed. She deserves severe, but constitutional, punishment.
On the record before us, we are unable to conclude either that defendant's mandatory life sentence is constitutional or that there is clear and convincing evidence to the contrary. Therefore, we vacate defendant's sentence and remand this case to the district court for a hearing at which defendant may present evidence that she is "exceptional ... a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case." State v. Young, 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, writ denied, 95-3010 (La.3/22/96), 669 So.2d 1223 (Plotkin, J., concurring). The district court must also consider whether, in light of the evidence presented by defendantand any countervailing evidence presented by the Statea mandatory life sentence, for this defendant, makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and/or is grossly out of proportion to the severity of her crime. Lobato, supra.[3] If defendant succeeds in carrying her burden, the district court, after carefully considering the evidence before it, shall use its great discretion to sentence her to the longest sentence that is not constitutionally excessive, i.e. to the maximum constitutional sentence. Randall, 741 So.2d at 860.[4]
99-2824 at pp. 6-7, 757 So.2d at 875-76.
Thus, in Stevenson, the court found that the scant record evidence suggested that the mandatory life sentence might be unconstitutionally excessive, but because the evidence was insufficient to definitely resolve the issue, the court vacated the sentence and remanded the case to allow the defendant the opportunity to do what he did not do at the habitual offender hearingprove by clear and convincing evidence that the mandatory minimum sentence under the Habitual Offender Law is unconstitutionally excessive as applied to him. This result takes Burns a step further, in that in Burns the ample record evidence apparently was sufficient to definitively resolve the issue of excessiveness.
In the instant case, there was no mitigating evidence presented by the defendant.[5] The defendant was thirty-two years old at the time of sentencing. In addition to the present conviction for attempted possession of cocaine, the defendant had a prior conviction for possession with intent to distribute three bags of cocaine, and one for possession of cocaine. *42 The defendant pleaded guilty to the distribution offense in December 1995 and received a suspended five year sentence with three years active probation. He pleaded guilty to the possession charge in June 1995, and received a sentence of one year at hard labor, to run concurrently with the five-year sentence on the distribution charge, his probation in that earlier case having been revoked. The defendant was arrested for the instant offense three years later, in July 1998. The instant conviction was for attempted possession of one rock of crack cocaine. No one testified on the defendant's behalf as to any redeeming virtues he had and, although the defendant testified at trial understandingly he did not confess to being a cocaine addict. However, as in Stevenson, it can be noted that the trial court ordered the defendant to participate in a substance abuse program as a condition of probation after his 1993 conviction, suggesting a drug abuse problem. As with the defendants in Burns and Stevenson, there was no evidence that the defendant had ever been arrested for a violent crime or had ever illegally used a weapon. Finally, a minute entry from August 12, 1998 reflects that the State offered, but the defendant rejected, a plea agreement whereby the defendant would plead guilty in exchange for a sentence of five years at hard labor. It might be inferred form this plea offer that the State did not feel that the defendant presented an undue danger to society.
Stevenson cannot be distinguished adversely to the defendant in the instant case. The three felonies committed by the defendant in Stevenson were distribution of cocaine, felony theft and simple burglary of an inhabited dwelling. The three felonies committed by the defendant in the instant case were possession with intent to distribute cocaine, possession of cocaine, and attempted possession of cocaine the defendant has never been convicted of stealing from someone or burglarizing someone's dwelling, only cocaine offenses.
Following Stevenson, we find that the record suggests that the defendant is simply a drug addict who might not be deserving of the minimum mandatory life sentence provided by La. R.S. 15:529.1(A)(1)(b)(ii). Therefore, we vacate the defendant's sentence and remand this case for a hearing at which the defendant may show by clear and convincing evidence that the mandatory sentence is unconstitutionally excessive as applied to him.
For the foregoing reasons, the defendant's conviction is affirmed, but the sentence is vacated, and this case is remanded for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED, REMANDED FOR RESENTENCING.
NOTES
[1] The defendant was indicted along with a codefendant, Cherrika Landry. Ms. Landry pleaded guilty on July 28, 1998, and was sentenced to three years at hard labor, suspended, with three years active probation.
[2] The defendant filed a written motion to reconsider sentence on the date of sentencing, setting forth the ground of constitutional excessiveness, thus preserving his right to assert this claim on appeal. See La.C.Cr.P. arts. 881.1, 881.2.
[3] State v. Lobato, 603 So.2d 739 (La.1992).
[4] State v. Randall, 98-1763 (La.App. 3 Cir. 6/9/99), 741 So.2d 852, writ granted, 1999-2476 (La.2/11/00), 754 So.2d 245.
[5] There is no indication the trial court ordered a pre-sentence investigation report.