JjKIRBY, J.
On December 31, 1997, the defendant, Thomas Phillips, was charged by bill of information with possession of cocaine, a violation of La. R.S. 40:967. He was arraigned January 8, 1998, and pled not guilty. Defendant filed a motion to suppress the evidence. On January 29, 1998, the trial court found probable cause and denied the motion to suppress. On March 31, 1998, a six member jury found defendant guilty as charged. On April 9, 1998, he was sentenced to thirty months at hard labor. The State filed a multiple bill. On March 30, 1999, the trial court found defendant to be second offender, vacated the original sentence and resentenced him to thirty months at hard labor without benefit of parole, probation, or suspension of sentence under La. R.S. 15:529.1. The defendant now appeals.
A review of the record for errors patent reveals none.
At trial, Officer Hal Amos testified that on November 1, 1997, at 3:30 a.m., he saw “a large group of subjects loitering on the sidewalk” in an area known for narcotics. When the people saw the marked police unit, they dispersed. The defendant was “nervous”, “continually looking over his shoulder.” The defendant was ordered “to the car.” He then threw down a rock of cocaine, which was retrieved.
| gAmos denied any previous “close contact” with the defendant or harassment of him.
On cross-examination, he said that he knew the defendant from the neighborhood, but could not recall arresting him previously. He then admitted his badge number appeared on an arrest of the defendant for “obstructing” in January 1997.
The defendant testified that he was at a Halloween party and was going to the store to replenish party supplies. He was walking down a driveway when he heard someone call out that the police were in the neighborhood. A group of people were on the corner and began to run. Amos harassed him, then went to the corner and found the cocaine on the ground. He said that Amos had arrested him on several occasions for as trite an “offense” as carrying a concealed weapon when he was using a knife to spread mayonnaise on a sandwich. According to defendant, Amos tracked him, threatened him, and tried to force him to provide incriminating evidence on other people. The defendant admitted to drug use and prior convictions but said that he was a member of a rehabilitation group and a frequent lecturer on the subject.
Donald White testified that he was returning from the store when he saw the police car approach and the crowd on the corner disperse. The defendant was not with the group. He saw Amos pick up the cocaine from the ground, some distance from where he had stopped the defendant.
The defendant argues the trial court erred in denying his motion to suppress the evidence.
Amos’s testimony at the motion to suppress hearing differed substantially from his testimony at trial. The evidence before the trial court when it ruled on the [amotion was Amos’s testimony that the defendant threw down the cocaine before the officers approached him. In fact, Amos testified that the defendant threw down the cocaine even before the officers got out of the car. Under that scenario, the only issue before this Court would be the abandonment exception to the warrant requirement. Property that is abandoned without any prior unlawful intrusion into a citizen’s right to be free from governmental interference may be lawfully seized. State v. Belton, 441 So.2d 1195 (La.1983), cert. denied Belton v. Louisiana, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). However, because Amos testified at trial *991 that he had initiated a stop by ordering the defendant “to the car” before the defendant abandoned the cocaine, we must examine whether the initial stop was lawful.
A police officer has the right to detain briefly and interrogate a person when the officer has a reasonable articula-ble suspicion that the person is, has been, or is about to be engaged in criminal conduct. La.C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Tucker, 626 So.2d 707 (La.1993). “Reasonable suspicion” is something less than probable cause, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of an individual’s right to be free from governmental interference. State v. Robertson, 97-2960 (La.10/20/98), 721 So.2d 1268. Mere suspicious activity is not a sufficient basis for police interference with an individual’s freedom. State v. Williams, 421 So.2d 874 (La.1982). However, the level of suspicion need not rise to the probable cause needed for a lawful arrest. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. Belton. An investigative stop must be justified by some objective manifestation that the | ¿person to be stopped is or is about to be engaged in criminal activity, or else there must be reasonable grounds to believe that the person is wanted for past criminal conduct. State v. Moreno, 619 So.2d 62 (La.1993).
In State v. Ganier, 591 So.2d 1328 (La.App. 4 Cir.1991), police officers were patrolling a housing project in New Orleans known to be a center of drug trafficking. The defendant saw the officers, turned and began to walk away, and then began to run. The officers chased the defendant until he was apprehended. Before being apprehended, the defendant threw down a rock of crack cocaine. This Court found that two factors were sufficient to justify a stop of the defendant: the area’s reputation for drug trafficking, and the suspicious actions of the defendant. This Court noted:
... Drug activity and crimes which it generates have become a major problem endangering innocent people and severely taxing police resources. Although an innocent individual who has nothing to hide from police might flee so that such flight would be irrational, the action of fleeing in itself is inherently suspicious and justifies an investigation by a police officer exercising common sense. This is not the case of a man merely standing on a street corner who is detained by the police simply because he is there.
State v. Ganier, 591 So.2d at 1330.
However, in cases where the defendant did not flee, this Court has refused to find reasonable suspicion. In State v. Scott, 98-2642 (La.App. 4 Cir. 2/16/00), 754 So.2d 1108, the only facts articulated by the officers were (1) that the area they were patrolling was known for narcotics and prostitution activity and (2) that defendant was standing or hovering near and looking into the “open” back door of an open business establishment. It was unclear from the record whether the “open” door was actually standing open in addition to being unlocked. However, because ^defendant was looking or “peeping” into the door, the court assumed that the door, if not a glass door, was at least partially standing open. The Court noted however that on the other hand, at the suppression hearing, the detective admitted that the parking lot near which he saw defendant was a public place, presumably meaning that anyone could have access to the area without difficulty. The detective also testified that defendant never attempted to open or enter the hotel door, nor did he notice defendant speaking or gesturing to anyone. Defendant did not attempt to discard or hide the pipe or to flee when he noticed the officers, although the detective stated that defendant had no opportunity to do so because the officers were very close to him *992 before he first noticed them. In fact, the detective testified that defendant did not notice the officers until they were “getting out of the car right on him.” The record contained no statement by the officers as to what crime they believed defendant was about to commit, nor is there any indication that the particular hotel was known for drug trafficking. Finally, the State elicited no testimony indicating how long the officers observed defendant’s conduct before they decided to conduct an investigatory stop. This Court stated:
[T]he State did not produce sufficient evidence to support the conclusion that the officers acted on more than pure suspicion when they stopped and frisked the defendant. The record reveals that, at the time the officers decided to stop defendant, his- actions were consistent with those of someone waiting for a hotel employee or guest. There were no objective signs that defendant was engaged in drug-related or other criminal activity. Cf. State v. Smith, 96-0640 (La.App. 4 Cir. 4/30/97), 694 So.2d 509, writ denied, 97-1424 (La.11/14/97), 703 So.2d 1287 (suspect in alley in high-crime area seen holding unmarked medicine bottle commonly used to hold illegal drugs). Finally, we- note that the State has cited no cases tending to justify a finding of reasonable suspicion on the minimal facts presented here.
Id. at pp. 5-6, 754 So.2d at 1111.
In State v. Ellington, 96-0766 (La.App. 4 Cir. 9/4/96), 680 So.2d 174, the defendant was standing in an area known for drug trafficking and prostitution. Upon seeing a marked police car, he briskly placed something in his pants pocket. Having observed the defendant’s motion, the police officer driving the car stopped and frisked him, finding cocaine. The defendant filed a motion to suppress this evidence, which the trial court granted. This Court later affirmed, finding that the officer lacked reasonable suspicion to conduct the investigatory stop.
In State v. Ratliff, 98-0094 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160, the defendant was observed standing with two or three other subjects in front of a residence late in the evening. Officers on proactive patrol made an investigatory stop, having received general complaints in the neighborhood. The officers observed defendant with his arms folded and holding something in his hand, but they saw no exchange and, in fact, admitted that none of the subjects appeared to be doing anything wrong. This Court there considered the reasonableness of the stop as follows:
We recognize that the reputation of an area is an articulable fact upon which an officer may rely and which is relevant in the determination of reasonable suspicion. State v. Richardson, 575 So.2d 421 (La.App. 4 Cir.), writ denied, 578 So.2d 131 (1991). We also note that deference should be given to the experience of the officers who were present at the time of the incident. State v. Taylor, 96-1843, p. 4 (La.App. 4 Cir. 10/29/97), 701 So.2d 766, 770, writ denied, 98-2233 (La.1/8/99), 1999 WL 39785, 734 So.2d 1224.
However, considering the totality of the circumstances, we must conclude that the officers lacked reasonable suspicion to stop Mr. Ratliff. Arguably, the fact that Mr. Ratliff kept his hand clenched the entire time the officers questioned him and his group and while he walked to the police car reasonably could have aroused the officers’ suspicion. However, Mr. Ratliff and his friends were subjected to an investigatory stop before |7this happened. Officer Burns testified that he decided to conduct an investigatory stop simply because Mr. Ratliff was standing, with his arms folded and his fist closed, on the sidewalk in front of a house at 11:00 in the evening in an area known for drug trafficking. Officer Burns could point to no other factors in support of the stop. He observed no transactions between the members of the group or passing *993 vehicles; none of the group attempted to flee when the officers’ approached; no one was doing anything wrong.
Although this Court is cognizant of the drug related criminal problem in this state and City, we cannot agree that the officers’ stop of Mr. Ratliff was based on reasonable suspicion. For this reason, the conviction is reversed.
Id. at pp. 3-4, 737 So.2d at 254-255 (emphasis added).
In this case, the only State witness at both the motion to suppress hearing and the trial was Officer Hal Amos. Amos stated that at both the motion hearing and at trial that the defendant was in an area known for drug trafficking and looked nervous and kept looking over his shoulder. However, on the critical issue of when the defendant threw down the cocaine. Officer Amos’s testimony at trial differed substantially from the testimony before the court at the time the motion to suppress was denied. At the motion hearing, Officer Amos testified that the defendant threw down the cocaine before the officers approached him. At trial, he testified that he ordered the defendant “to the car,” thereby initiating a stop, before the defendant threw down the cocaine. The difference between whether the defendant abandoned the cocaine before or after an investigatory stop is the crucial issue in determining whether the evidence in this case was lawfully seized. Evidence that defendant was in an area known for drug trafficking and appeared nervous would not, by itself, provide reasonable suspicion to the officers so as to justify an investigatory stop.
| RIn reviewing a trial court’s ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137. An appellate court should not overturn a trial court’s ruling on a motion to suppress, unless the trial court’s conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion. State v. Bargeman, 98-617, p. 5 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, 967, writ denied, 99-0033 (La.5/28/99), 743 So.2d 658.
In this case, the problem is not a conflict between the testimony of two or more witnesses at the hearing or at the trial. Instead, we are faced with the inconsistency between Officer Amos’s testimony at trial and his testimony at the motion hearing regarding when the defendant discarded the cocaine. Based on the officer’s testimony, which was more fully presented at the trial on the merits, we find the stop occurred before the cocaine was thrown down. At that point, the officer lacked reasonable suspicion for the stop. Therefore, we must reverse the trial court’s denial of the motion to suppress and the defendant’s conviction and sentence.
For these reasons, we reverse the defendant’s conviction and sentence. We also reverse the trial court’s denial of the motion to suppress the evidence. This case is hereby remanded for further proceedings.
REVERSED AND REMANDED.