788 So.2d 477 (2001)
STATE of Louisiana
v.
Paul WASHINGTON.
No. 99-KA-1111.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 2001.
*483 Harry F. Connick, District Attorney, Juliet Clark, Assistant District Attorney, New Orleans, LA, for plaintiff/appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, for defendant/appellant.
BEFORE: BYRNES, III, Chief Judge, and PLOTKIN and TOBIAS, Jr., JJ.
BYRNES, Chief Judge.

STATEMENT OF THE CASE
Defendant Paul Washington was charged by grand jury indictment on January 22, 1998, with possession with intent to *484 distribute heroin, a violation of La.R.S. 40:966(A)(1). Defendant pleaded not guilty at his January 27, 1998 arraignment. On September 15, 1998, the trial court granted a motion in limine filed by the State, and denied defendant's motion in limine. On the same day, defendant was tried by a twelve-person jury and found guilty as charged. The trial court denied defendant's motions for new trial and post verdict judgment of acquittal on December 4, 1998. After defendant waived legal delays, he was sentenced to life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. The trial court denied defendant's motion to reconsider sentence, and granted his oral motion for appeal.

FACTS
New Orleans Police Crime Laboratory Criminalist Theresa Lamb was qualified by stipulation as an expert in the chemical analysis of controlled dangerous substances. Ms. Lamb tested the white powder in one individual foil packet and four of twenty-four packets packaged in a key case. All of the samples tested positive for the presence of heroin.
New Orleans Police Sergeant Bryan Lampard testified that at approximately 3:30 p.m. on November 20, 1997, as he was driving in his personal car en route to the Second District station, he observed defendant leaning into the passenger-side window of a Ford Taurus parked at the corner of Valence and Magazine Streets. Defendant was manipulating something inside of the car. As the uniformed officer drew near, defendant looked at him, appeared startled, and immediately withdrew from the Taurus and walked to a nearby grocery store. Officer Lampard continued on several blocks to his district station, and subsequently went on duty. Some two hours later, after he and his partner answered several service calls, they drove to the area where Officer Lampard had observed defendant. The Taurus was parked in the same location. Officer Lampard observed defendant standing nearby with another male. The second male had his hand outstretched, and defendant attempted to hand that male an object. Officer Lampard, who testified that he knew the area as a "high narcotics area," stated that at that point he believed he was witnessing a narcotics transaction. Upon seeing the officers, defendant appeared startled. Defendant balled up his right fist and began walking in the direction of a grocery store and the nearby Taurus. The second male turned and began walking away in the opposite direction from defendant. The officers stopped defendant and, aware of the connection between narcotics and weapons, decided to frisk him for weapons. As defendant stepped toward the police car in compliance with the officers' directives, he discarded one foil packet to the ground. Officer Scott Knight, Officer Lampard's police recruit partner, recognized this as consistent with narcotics. Officer Knight retrieved the packet and opened it to find a white powder, which he recognized as heroin. Defendant was then advised of his rights and placed under arrest. Officer Lampard said he decided not to pursue the second individual because his police recruit partner had only been on the street for six weeks, and he did not want to leave him with a possibly armed suspect. Officer Lampard said that because he had previously seen defendant leaning inside of the Ford Taurus manipulating something, he suspected that defendant had his main "stash" inside of the vehicle. Officer Lampard entered the vehicle. Inside the console, he discovered a loaded .45 caliber semi-automatic pistol and a magnetic "hide-a-key" box containing numerous foil packets of heroin consistent with the one defendant had discarded. Officer Lampard identified the gun and *485 the total of twenty-five packets of heroin recovered that day. After defendant had been arrested and advised of his rights, he told the officers he was selling the heroin for "Bo," and said that it was Bo's car. The car was registered to Rainbow-Rent-a-Car, but the rental contract found in the vehicle was for a van.
Officer Lampard admitted on cross examination that when he initially saw defendant leaning into the car, defendant's hands were out of the officer's view. He also admitted that he could not identify the object he later saw defendant attempt to transfer to the other male. Officer Lampard did not request either that the gun or the magnetic key box be checked for fingerprints. The officer could not recall whether defendant had a valid driver's license on his person when arrested. Officer Lampard stated that he took defendant to the Second District police station several blocks away after he was arrested. When it was discovered that the car rental contract found in the car did not match the car, Officer Lampard returned to the scene, but the car was gone. He found no money on defendant's person. Officer Lampard said on redirect examination that the defendant was the only person he had seen leaning into the Taurus.
New Orleans Police Officer Scott Knight testified that when he saw defendant he looked like he was handing something to a black male who had his hand out as if to receive something. Upon seeing the officers, defendant retracted his hand, turned away from them, and started to walk away. They stopped defendant and ordered him to put his hands on the police car. As defendant was raising his hands, he opened his right one, and a small foil object hit the ground. He handcuffed defendant and retrieved the object, which he believed to contain heroin. Defendant was placed under arrest, and Officer Lampard entered the passenger side of a white Ford Taurus and found the gun and magnetic key box containing twenty-four packets of heroin. He said defendant later claimed that he was selling heroin for "Bo."

ERRORS PATENT
A review of the record reveals what would seem to be one error patent. Defendant was convicted of possession with intent to distribute heroin, and was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. La.R.S. 40:966(B)(1) provides that the penalty for this offense is life imprisonment at hard labor without benefit of probation or suspension of sentence. Courts have for years held that the denial of parole to a defendant sentenced to life imprisonment under this statute is an error patent. See State v. Marks, 337 So.2d 1177, 1180, n. 1 (La.1976); State v. Jones, 559 So.2d 892, 893 (La.App. 4 Cir. 1990). However, in Richardson v. La. Dept. of Public Safety & Corrections, 627 So.2d 635 (La.1993), the Louisiana Supreme Court concluded that it was not error for a trial court to deny the benefit of parole to a defendant sentenced pursuant to the same statutory provision, because under La. 15:574.4(B) a defendant sentenced to life imprisonment is not eligible for parole until his life sentence is commuted to a fixed number of years. In affirming the sentence imposed without the benefit of parole, the court noted that parole eligibility could not be considered until the defendant's life sentence was commuted to a fixed number of years. In adherence to Richardson, supra, there is no reversible error in the trial court's denying defendant the benefit of parole.

ASSIGNMENT OF ERROR NO. 1
In this assignment of error, defendant claims the trial court erred in denying his motion to suppress the evidence.
*486 Warrantless searches and seizures fail to meet constitutional requisites unless they fall within one of the narrow exceptions to the warrant requirement. State v. Edwards, 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901, cert. denied, Edwards v. Louisiana, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999). On trial of a motion to suppress, the State has the burden of proving the admissibility of all evidence seized without a warrant. La. C.Cr.P. art. 703(D); State v. Jones, 97-2217, p. 10 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 395, writ denied, 99-1702 (La.11/5/99), 751 So.2d 234. A trial court's ruling on a motion to suppress the evidence is entitled to great weight, because the court has the opportunity to observe the witnesses and weigh the credibility of their testimony. State v. Mims, 98-2572, p. 3 (La.App. 4 Cir. 9/22/99), 752 So.2d 192, 193-194. In reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137.
La. C.Cr.P. art. 215(A) provides that:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
"Reasonable suspicion" to stop is something less than the probable cause required for an arrest, and the reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect's rights. State v. Littles, 98-2517, p. 3 (La.App. 4 Cir. 9/15/99), 742 So.2d 735, 737; State v. Clay, 97-2858, p. 4 (La.App. 4 Cir. 3/17/99), 731 So.2d 414, 417, writ denied, 99-0969 (La.9/17/99), 747 So.2d 1096. This level of suspicion, however, need not rise to the probable cause required for a lawful arrest. The police need only have some minimal level of justification. Id. Evidence derived from an unreasonable stop, i.e., seizure, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Tyler, 98-1667, p. 4 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 770. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. See State v. Harris, 99-1434, pp. 2-3 (La.App. 4 Cir. 9/8/99), 744 So.2d 160, 162. The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914; State v. Mitchell, 98-1129, p. 9 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 326. The detaining officers must have knowledge of specific articulable facts which, if taken together with rational inferences from those facts, reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299; State v. Keller, 98-0502, p. 3 (La.App. 4 Cir. 3/10/99), 732 So.2d 77, 78. In reviewing the totality of the circumstances, the officer's past experience, training and common sense may be considered in determining if his inferences from the facts at hand were reasonable. State v. Cook, 99-0091, p. 6 (La.App. 4 Cir. 5/5/99), 733 So.2d 1227, 1232; State v. Williams, 98-3059, p. 3 (La.App. 4 Cir. 3/3/99), 729 So.2d 142, 144. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254, writ denied, 99-1523 (La.10/29/99), 748 So.2d 1160. The court must also weigh the circumstances *487 known to the police not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. State v. Huntley, 97-0965, p. 3 (La.3/13/98), 708 So.2d 1048, 1049.
The fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken so long as the circumstances, viewed objectively, justify that action. State v. Kalie, 96-2650, p. 3 (La.9/19/97), 699 So.2d 879, 881. As long as the totality of circumstances reveal an objective and articulable basis for the stop, it is not necessary that the officer fully articulate the basis himself. Id.
Flight from police officers alone will not provide justification for a stop. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989; State v. Sartain, 98-0378, pp. 17-18 (La.App. 4 Cir. 12/1/99), 746 So.2d 837, 849, writ denied, XXXX-XXXX (La.9/15/00), 769 So.2d 4. However, flight from police officers is highly suspicious and, therefore, may be one of the factors leading to a finding of reasonable suspicion to stop. State v. Fortier, 99-0244, p. 7, (La.App. 4 Cir. 1/26/00), 756 So.2d 455, 459, writ denied, XXXX-XXXX (La.9/22/00), 768 So.2d 1285, citing Benjamin, supra. Further, flight by one's companion at the sight of police can be a factor in determining reasonable suspicion. Id. Given the highly suspicious nature of flight from a police officer, the amount of additional information required in order to provide officers reasonable suspicion that an individual is engaged in criminal behavior is greatly lessened. Benjamin, supra; Fortier, 99-0244 at p. 7, 756 So.2d at 460.
Defendant first argues that the officers did not have reasonable suspicion to initially stop him. Clearly, there is no merit to this assertion. Officer Lampard initially saw defendantin what the officer knew was a "high narcotics area"engage in what he believed to be suspicious behavior. When defendant saw the officer he appeared startled and took flight, although he did so by simply walking away. However, no police action was taken at that point. At the motion to suppress hearing, but not at trial, Officer Lampard testified that some two months earlier a Federal Probation and Parole Agent informed him that one of his probationers had tipped him that there was narcotics activity occurring at that location.[1] Two hours after he initially observed defendant's suspicious behavior, Officer Lampard and his partner saw defendant apparently in the process of handing something to someone. Again, when defendant saw the officers in their marked police unit, he appeared startled, immediately retracted his hand, and walked away, i.e., fled. At the same time, the second individual, who had his hand outstretched as if to receive something from defendant, retracted his hand and walked away in the opposite direction from defendant.
In State v. Phillips, XXXX-XXXX (La. App. 4 Cir. 10/4/00), 774 So.2d 989, this court held that there was insufficient reasonable suspicion to stop where the officer simply saw the defendant loitering on a sidewalk with a large group of individuals in an area known for narcotics activity, even though the defendant appeared nervous and was looking over his shoulder,.
*488 Contrast Phillips with State v. Bazile, 99-1821 (La.App. 4 Cir. 3/29/00), 757 So.2d 851, where this court found reasonable suspicion for an investigatory stop after officers saw the defendant attempting to flag down passing motorists. Upon seeing the officers, the defendant abruptly stopped, furtively looked around and began walking away. As he walked away, the defendant put his hand in his pocket and furtively looked over his right shoulder toward the officers. In addition to these observations, the officers had received general complaints of drug activity in the particular block where they saw the defendant, and one of the officers testified that he had made eight to ten drug arrests in that block. One officer also testified that narcotics traffickers often flag down passing motorists to make quick retail drug sales.
In State v. Hall, 99-2887 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, officers investigating an anonymous tip of drug activity at a particular location arrived at the scene to observe the defendant standing on a porch with his hand outstretched toward a female on the ground. The female had currency in her hand. The two individuals retracted their respective hands at the sight of the officers. The female turned and walked away; the defendant turned and "quickly" walked into a hallway. This court found on those facts that the officers had reasonable suspicion.
Defendant in the instant case was engaging in what the officers believed to be a drug transaction with the second male, based on their knowledge of the high drug area, their experience and commonsense judgment. Both men "fled" at the sight of the officers. In addition, Officer Lampard had two hours earlier observed defendant become startled at the sight of him, and immediately take what might be considered an evasive action in response thereto. Further, Officer Lampard had been tipped two months earlier by a federal agent that there was narcotics activity at that location. Considering the totality of the circumstances, as in Bazile and Hall, the officers in the instant case had reasonable suspicion to believe that defendant was committing a crime, and lawfully stopped him. The tin foil packet of heroin discarded by defendant after he was stopped was lawfully recovered by police. Thus, the trial court properly denied the motion to suppress as to this single foil packet of heroin.
Defendant next argues that the officers did not lawfully search the Ford Taurus. Defendant's sole argument as to this issue is that the officers did not have probable cause to believe the vehicle contained contraband. Under the pertinent facts of the instant case, probable cause to search exists when the totality of the facts and circumstances within the officer's knowledge are sufficient to support a reasonable belief that evidence or contraband may be found in the vehicle to be searched. See State v. Martin, 97-2904, pp. 4-5 (La.App. 4 Cir. 2/24/99), 730 So.2d 1029, 1031-1032, writ denied, 99-0874 (La.10/1/99), 747 So.2d 1136. The determination of probable cause does not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance of the evidence standard demands, but rather, involves factual and practical considerations of everyday life on which average police officers can be expected to act. State v. James, 99-0423, p. 11 (La. App. 4 Cir. 2/16/00), 755 So.2d 995, 1002, citing State v. Simms, 571 So.2d 145 (La. 1990).
As previously discussed, prior to lawfully stopping defendant, the officers had reasonable suspicion to believe defendant had been engaged in a drug transaction with another male. After they lawfully *489 stopped defendant, he discarded a foil packet of heroin. Officer Lampard said defendant had been preparing to hand an object to the second individual. The evidence establishes that the object was a foil packet of heroin. Thus, defendant was the distributor. Officer Lampard had already received information from a federal agent that narcotics activity was occurring at that location. He had some two hours earlier seen defendant leaning through the passenger window of an unoccupied vehicle manipulating something with his hands, and defendant became startled and took evasive action upon seeing the officer. The car was still there two hours later, and so was defendant-attempting to sell one packet of heroin. Officer Lampard also testified without objection that narcotics sellers do not wish to keep all of their narcotics on their person, so he believed defendant was secreting additional contraband inside of the car. Considering the totality of the circumstances, Officer Lampard had probable cause to believe that more contraband was located in the vehicle.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant claims the trial court erred in denying his motion in limine, wherein he sought to exclude any testimony regarding the .45 caliber semi-automatic pistol recovered from inside the console of the vehicle, next to the magnetic key case containing twenty-four packets of heroin. Defendant claimed that the evidence was inadmissible because it was irrelevant and prejudicial.
Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.C.E. art. 401. Relevant evidence is generally admissible. La.C.E. art. 402. Evidence essentially is deemed relevant "when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding," whether or not it may constitute evidence of another crime, wrong or bad act by a defendant. See La.C.E. art. 404(B); see also State v. Walker, 99-2217, pp. 6-7 (La.App. 4 Cir. 10/25/00), 775 So.2d 484, 488-89, . The purpose served by the admission of such evidence, referred to as the "res gestae," is to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. Id. Further, it is recognized that firearms are as much tools of the narcotics trade as are most other common articles of drug paraphernalia. State v. Wilson, XXXX-XXXX, p. 3 (La.12/8/00), 775 So.2d, 1051, 1053; see also State v. James, 99-3304, p. 7 (La.12/8/00), ___ So.2d ___, ___, 2000 WL 1821204 (frequent association of narcotics trafficking with firearms justified officer's brief, self-protective frisk of drug suspect's outer clothing). Thus, it can be argued that just as drug paraphernalia found with drugs is admissible evidence, so are firearms.
In State v. Colomb, 98-2813 (La.10/1/99), 747 So.2d 1074, police officers stopped the defendant in a vehicle for suspicion of drug activity, and saw a gun on the floorboard of the vehicle. When the officers asked the defendant if he had any drugs on his person, he pulled up his shirt to reveal a plastic bag of marijuana. The Louisiana Supreme Court held that evidence of the marijuana was admissible at the defendant's trial for possession of a firearm by a convicted felon as part of the res gestae to provide, inter alia, narrative completeness to the case. The court found that because the evidence against the defendant as to gun charge was so *490 strong, there was no need to balance the probative value of the marijuana evidence against its possible prejudicial effect, and in fact suggested that such a balancing test might not be necessary when the evidence in question was admissible as part of the res gestae. This court applies the balancing test of La.C.E. art. 403 to res gestae evidence. State v. Smith, 94-1502, p. 6 (La.App. 4 Cir. 1/19/95), 649 So.2d 1078, 1083. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.C.E. art. 403. Unfair prejudice as used in the article means that in the context the offered evidence has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." State v. Brooks, 98-0693, p. 16 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 823, writ denied, 99-2519 (La.2/25/00), 755 So.2d 247, quoting 1997 Authors' Notes to La.C.E. art. 403. A trial court is vested with much discretion in determining whether the probative value of relevant evidence is substantially outweighed by its prejudicial effect. See State v. Lambert, 98-0730, p. 22 (La.App. 4 Cir. 11/17/99), 749 So.2d 739, 755, writ denied, XXXX-XXXX (La.1/26/01), 781 So.2d 1258; Brooks, 98-0693 at p. 16, 758 So.2d at 822.
Defendant argues that permitting the gun to be viewed by the jury and discussed by the arresting officers intimated that he was somehow involved in a larger scheme of drug dealing, and painted him as a violent individual. The State introduced the gun into evidence, and also elicited from Officer Lampard that the .45 caliber semi-automatic handgun was "loaded and ready to fire." If, as defendant suggests, this was a blatant attempt by the prosecutor to elicit an emotional reaction from the jury, it was entirely transparent. The jurors were aware that defendant was facing a mandatory life sentence if convicted of the offense charged. They knew that to convict defendant, they had to determine beyond a reasonable doubt that he had exercised dominion and control over the heroin found in the console of the vehicle, which happened to be located within inches of the gun in the console. If the jurors believed defendant exercised dominion and control over the heroin, then logically they would have to believe he also had exercised dominion and control over the gun. There is nothing to suggest that the evidence concerning the gun would have caused the jury to convict defendant of the heroin offense absent a finding that he had exercised dominion and control over the heroin.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3

PRO SE ASSIGNMENT OF ERROR
In these assignments of error, defendant claims the evidence was insufficient to sustain his conviction for possession of heroin with intent to distribute, as the evidence was insufficient to establish that he possessed the twenty-four bags of heroin. Defendant makes no argument as to the intent to distribute element of the offense.
This court set out the well-settled standard for reviewing convictions for sufficiency of the evidence in State v. Ragas, 98-0011 (La.App. 4 Cir. 7/28/99), 744 So.2d 99, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable *491 doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d at 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
Id. at pp. 13-14, 744 So.2d at 106-107, quoting State v. Egana, 97-0318, pp. 5-6 (La.App. 4 Cir. 12/3/97), 703 So.2d 223, 227-228.
In State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, the Louisiana Supreme Court stated:
"The actual trier of fact's rationalities credibility calls, evidence weighing, and inference drawing are preserved ... by the admonition that the sufficiency inquiry does not require a court to ask itself whether it believes that the evidence at trial established guilt beyond a reasonable doubt." State v. Mussall, 523 So.2d 1305, 1311 (La.1988). The reviewing court is not called upon to determine whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. Rather, the court must assure that the jurors did not speculate where the evidence is such that reasonable jurors must have a reasonable doubt. (citing 2 C. Wright, Federal Practice and Procedure, Criminal 2d, § 467, at 465-466 (1982)). The reviewing court cannot substitute its idea of what the verdict should be for that of the jury. Id. Finally, the "appellate court is constitutionally precluded from acting as a `thirteenth juror' in assessing what weight to give evidence in criminal cases; that determination rests solely on the sound discretion of the trier of fact." State v. Azema, 633 So.2d 723, 727 (La.App. 1 Cir. 1993).
Id. at p. 8, 772 So.2d at 83.
To convict for possession of narcotics, the State must prove that a defendant knowingly possessed narcotics. State v. Lewis, 98-2575, p. 3 (La.App. 4 Cir. 3/1/00), 755 So.2d 1025, 1027; State v. Ricard, 98-2278, p. 7 (La.App. 4 Cir. 1/19/2000), 751 So.2d 393, 397, writ den. *492 XXXX-XXXX (La.12/8/00), 775 So.2d 1078. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support a conviction. State v. Robinson, 99-2236, p. 5 (La.App. 4 Cir. 11/29/00), 772 So.2d 966. Factors to be considered in determining whether a defendant exercised dominion and control over drugs are: the defendant's knowledge that illegal drugs were present in the area, the defendant's relationship with the person in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use, the defendant's proximity to the drugs, and evidence that the area was being frequented by drug users. State v. Mitchell, 97-2774, p. 12 (La.App. 4 Cir. 2/3/99), 731 So.2d 319, 328; State v. Booth, 98-2065, p. 6 (La.App. 4 Cir. 10/20/99), 745 So.2d 737, 742. "A person may be deemed to be in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control it." Booth at p. 5-6, 745 So.2d at 741-742. However, mere presence in an area where drugs are found is insufficient to establish constructive possession. State v. Walker, 99-1957, p. 3 (La.App. 4 Cir. 5/17/00), 764 So.2d 1130, 1133.
In the instant case, Officer Lampard observed defendant leaning into a parked vehicle in what he characterized as a known drug area. Defendant was manipulating something inside the vehicle, and when he saw Officer Lampard he hurriedly withdrew from the vehicle and walked off. Some two hours later, Officer Lampard and his partner observed defendant engage in what they believed to be a drug transaction, standing near that same corner where he had been seen earlier. The vehicle defendant had been leaning into several hours earlier was still parked nearby in the same location. Defendant discarded a foil packet of heroin when confronted by the officers. A search of the vehicle turned up twenty-four foil packets of heroin like the one defendant discarded. Defendant had no money on his person, and none was found in the vehicle. Nor did defendant have in his possession a key to the vehicle. The vehicle was moved by an unknown person or persons within a short time after defendant was taken from the scene.
Defendant had full access to the interior of the nearby vehicle and the console where the heroin was found. He had been seen leaning into it manipulating something. No one else had been seen in the vehicle. The packet of heroin defendant discarded in the presence of the officers was like the ones found in the vehicle. Defendant admitted selling drugs for someone else. Even if the drugs in the vehicle belonged to someone else, defendant could have exercised dominion and control over them.
Defendant cites State v. Smith, 98-0366 (La.App. 4 Cir. 5/12/99), 744 So.2d 73, where this court reversed the defendant's conviction for possession of a firearm by a convicted felon, finding that the evidence was insufficient to prove beyond a reasonable doubt that the defendant constructively possessed it. The defendant, who was driving his mother's vehicle, was arrested on outstanding warrants after a traffic stop. Police found a .38 caliber revolver underneath the driver's seat. One of the two passengers testified that she was unaware of the gun, and that neither she nor the second passenger had brought the gun into the car. The defendant's mother testified that she did not own a gun and that three persons besides herself and the defendant used the car. This case is not analogous to the instant one. It would be analogous if the defendant in Smith had been found with a .38 caliber cartridge in *493 his pocket that matched the ones in the loaded .38 caliber revolver. However, if that had been the case in Smith, this court would not have reversed the defendant's conviction. In Smith, this court distinguished State v. Armentor, 94-745 (La. App. 3 Cir. 2/1/95), 649 So.2d 1187, writ denied, 95-0557 (La.6/30/95), 657 So.2d 1027, where the appellate court affirmed the convicted felon defendant's conviction for (constructive) possession of a .22 caliber handgun found under the passenger seat of the vehicle in which he was a passenger, partly because police found fifteen to twenty rounds of .22 caliber ammunition in the defendant's pants pocket.
In State v. Allen, 96-0138 (La.App. 4 Cir. 12/27/96), 686 So.2d 1017, police observed Ennis Allen engage in what appeared to be drug sales. He was operating with his three brothers. One brother, Kenner, owned a Ford Thunderbird. Kenner was observed opening the trunk of the vehicle, removing three small objects which he handed to another brother, Roosevelt. There was no evidence that Ennis Allen ever entered the vehicle or reached into its trunk. However, this court affirmed Ennis' conviction for possession of cocaine found in the trunk, noting that he had not only been in close proximity to the cocaine, but had assisted in selling other drugs he appeared to have retrieved from the hallway of a nearby apartment complex.
Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that defendant had dominion and control over the twenty-four bags of heroin found in the vehicle.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 4
In this assignment of error, defendant avers that the trial court erred in granting the State's motion in limine, ordering counsel for defendant not to question, mention, refer or allude to any particular acts, vices, or courses of conduct for which that witness has not been convicted, or, more specifically, not to make mention, refer or allude to any newspaper articles or published periodicals which contain allegations or particular bad acts, vices, or courses of conduct for which that witness has not been convicted.
The State's memorandum accompanying its motion in limine, the transcript of the motion in limine and defendant's brief, when read together indicate that the State sought to bar introduction or reference to any conduct by Officer Lampard which was the subject of a newspaper article alleging that he and another officer "jacked people up and stuff like that." The State represented during argument that the matter had been summarily dismissed by the police department, and that there had been no suspension or conviction of any crime in connection therewith. Counsel for defendant stated that he did not intend to get into any specifics of the newspaper article, but objected to the facts that he would not be allowed to bring before the jury. It can safely be said that counsel for defendant wished either to question Officer Lampard about some unrelated activities he had been accused of, or to present some extrinsic evidence of such activities, in order to attack the officer's credibility.
La.C.E. art. 607 provides for, in pertinent part:
C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tendency to disprove the truthfulness or accuracy of his testimony.

*494 D. Attacking credibility extrinsically. Except as otherwise provided by legislation.
(1) Extrinsic evidence to show a witness' bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness' testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risk of undue consumption of time, confusion of the issues, or unfair prejudice.
"Intrinsic" evidence is testimony elicited from the witness himself; "extrinsic" evidence is evidence other than the witness' testimony. See, 1999 Authors' Note (7) to art. 607. The provisions of La.C.E. art. 607(C) and (D)(1) are subject to the balancing test of La.C.E. art. 403. See, Official Comment (h), (1988) to art. 607; 1999 Authors' Note (9) to art. 607, respectively. The balancing test in La.C.E. art. 607(D)(2) differs little on its face from the balancing test of La.C.E. art. 403. See, 1999 Authors' Note (10) to art. 607.
La.C.E. art. 608 provides for, in pertinent part:
A. Reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of general reputation only, but subject to these limitations:
(1) The evidence may refer only to character for truthfulness of untruthfulness.
* * *
B. Particular acts, vices, or courses of conduct. Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required.
La.C.E. art. 403 provides that, "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.C.E. art. 403. Unfair prejudice as used in the article means that in the context the offered evidence has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." State v. Brooks, 98-0693, p. 16 (La.App. 4 Cir. 7/21/99), 758 So.2d 814, 823, writ denied 99-2519 (La.2/25/00), 755 So.2d 247, quoting 1997 Authors' Notes to La.C.E. art. 403. A trial court is vested with much discretion in determining whether the probative value of evidence is substantially outweighed by its prejudicial effect. See, State v. Lambert, 98-0730, p. 22 (La.App. 4 Cir. 11/17/99), 749 So.2d 739, 755; writ denied, XXXX-XXXX (La.1/26/01), 781 So.2d 1258; State v. Brooks, supra, at p. 16, 758 So.2d at 822, writ denied, 99-2519 (La.2/25/00), 755 So.2d 247.
Defendant argues that the trial court's granting of the motion in limine prohibited him from fully confronting the State's witness against him, citing La. Const. art. I, § 16[2] and the Sixth Amendment to the U.S. Constitution.[3] Defendant *495 cites the seminal case of Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), where the U.S. Supreme Court stated:
The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution `to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Confrontation means more than being allowed to confront the witness physically. `Our cases construing the (confrontation) clause hold that a primary interest secured by it is the right of cross-examination.' Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). Professor Wigmore stated:
`The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' (Emphasis in original.) 5 J. Wigmore, Evidence s 1395, p. 123 (3d ed. 1940).
Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is `always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J. Wigmore, Evidence s 940, p. 775 (Chadbourn rev. 1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. Greene v. McElroy, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). (Footnotes omitted).
415 U.S. at 315-317, 94 S.Ct. at 1110.
In Davis, defense counsel was prohibited under Alaska state law from cross-examining a key prosecution witness concerning the witness' adjudication as a juvenile delinquent relative to a burglary, as well as his probation status at the time of the events as to which he was to testify. The defense wished to show that the juvenile witness was biased because of his vulnerable status as a probationer and concern that he might be a suspect in the burglary for which the defendant was being tried. The U.S. Supreme Court held that the defendant's right of confrontation, his right to effectively cross-examine the witness, was paramount to the State's interest *496 in protecting the juvenile from embarrassment as a result of the disclosure of his record.
Defendant fails to analogize Davis to the facts in the instant case, where defense counsel apparently wished to impeach the credibility of Officer Lampard with facts derived from a newspaper article concerning unrelated complaints which had been resolved as unfounded by the police department. Any disgruntled criminal can lodge a complaint against a police officer. Officer Lampard had not been convicted of a crime. The trial court questioned the accuracy and reliability of the reports. Defendant fails to show that the trial court abused its discretion in implicitly finding that allowing defense counsel to bring out this evidence was either not relevant to the issue credibility or, if relevant, its relevance was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 5
In this last assignment of error, defendant complains that his life sentence is unconstitutionally excessive, and the trial court failed to consider the sentencing factors enunciated in La.C.Cr.P. art. 894. 1.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99); State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2982 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987), writ denied, 516 So.2d 366 (La.1988). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677; State v. Webster, 98-0807, p. 3 (La.App. 4 Cir. 11/10/99), 746 So.2d 799, 801, reversed on other grounds, State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979; State v. Hills, 98-0507, p. 5 (La.App. 4 Cir. 1/20/99), 727 So.2d 1215, 1217.
The mandatory life sentence provided by La.R.S. 40:966(B) is not per se unconstitutionally excessive, cruel or unusual, or disproportionate. See Richardson v. La. Dept. of Public Safety & Corrections, 627 So.2d 635, 637 (La.1993) (life for distribution of heroin under La.R.S. 40:966(B)). Nevertheless, a trial court has the authority to determine that any mandatory minimum sentence is constitutionally excessive as applied to a particular defendant. See State v. Dorthey, 623 So.2d 1276 (La.1993) (mandatory minimum sentences provided by the Habitual Offender Law); State v. Fobbs, 99-0124 (La.9/24/99), 744 So.2d 1274 (mandatory minimum sentence for possession with intent to distribute cocaine); State v. Russell, 98-2773, pp. 9-11 (La.App. 4 Cir. 5/10/00), 764 So.2d 93 (possession of twenty-eight grams or more of cocaine but less than two hundred *497 grams). However, a court may only depart from a minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut the presumption of constitutionality. State v. Lindsey, 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Lindsey, 99-3256 at p. 5, 770 So.2d at 343, quoting State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676-677.
Where a defendant fails to present clear and convincing evidence to rebut the presumption of constitutionality, the sentence will be upheld. State v. Hayden, 98-2768, p. 15 (La.App. 4 Cir. 5/17/00), 767 So.2d 732, 742-743, citing State v. Alexander 98-1377 (La.App. 4 Cir 2/16/2000), 753 So.2d 933. The record and sentencing transcript contain no evidence presented by defendant from which the trial court could have found that the mandatory minimum sentence was unconstitutionally excessive, or constituted cruel and unusual punishment.
Defendant argues that the trial court failed to consider the sentencing factors in La.C.Cr.P. art. 894.1. Generally, in reviewing a claim that a sentence is excessive, an appellate court must determine whether the trial court has adequately considered the factors in La.C.Cr.P. art. 894.1. State v. Trepagnier, 97-2427, p. 11 (La. App. 4 Cir. 9/15/99), 744 So.2d 181, 189; State v. Robinson, 98-1606, p. 12 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 127. However, the purpose underlying La.C.Cr.P. art. 894.1 is to provide an explanation for a particular sentence in those cases where the trial court is given discretion to choose a sentence tailored to the offender's circumstances from within a legislatively-provided sentencing range; when the trial court does not have to choose a sentence from within a given range, it complies with La.C.Cr.P. art. 894.1 when it informs the defendant he is receiving the statutorily mandated sentence. State v. Burns, 97-1553, p. 7 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, 1018, writ denied, 98-3054 (La.4/1/99), 741 So.2d 1282. In the instant case, the trial court stated that it was imposing the sentence required by the legislature, and defense counsel acknowledged that the trial court had no discretion in sentencing.
Defendant notes that the trial court did not order a presentence investigation. However, the record does not reflect that defendant requested a presentence investigation, and defense counsel did not object to the failure of the trial court to order one. The ordering of a presentence investigation is discretionary with the trial court. La.C.Cr.P. art. 875(1); State v. Hayden, 98-2768, p. 27 (La.App. 4 Cir. 5/17/00), 767 So.2d 732, 748.
There is no merit to this assignment of error.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
PLOTKIN, J., concurs in part and dissents in part, with reasons.
PLOTKIN, J., concurring in part and dissenting in part, with reasons.
I concur with the majority on all legal issues except defendant's claim of excessive sentence.
*498 At the sentencing hearing on December 4, 1998, the trial court sentenced defendant to life imprisonment without benefit of probation, parole or suspension of sentence. Then the following exchange took place:
[DEFENSE COUNSEL]:
Please note our objection. At this time, we'd like to file a motion to reconsider sentence on two grounds: One, that the sentence is excessive, although we understand that the Court doesn't have any discretion; secondly, this is against the violation of cruel and unusual punishment.
THE COURT:
Those are denied. You're quite correct when you indicate this Court has no discretion on a case involving intent to distribute. I sentenced Mr. Washington to the sentence as required by the legislature in this case. The motion to reconsider therefore is denied and I note your objection.
The trial court gave no other reasons or factual basis for imposing a life sentence. Therefore, the trial court did not comply with La.C.Cr.P. 894.1(C), which requires the court to "state for the record the considerations taken into account and the factual basis therefor in imposing the sentence." See also State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339.
I would vacate the sentence and remand to the trial court for resentencing. Accordingly, I respectfully dissent on the issue of excessive sentence.
NOTES
[1] Hearsay is permitted at a motion to suppress hearing. State v. James, 99-0423, p. 11 (La.App. 4 Cir. 2/16/00), 755 So.2d 995, 1002.
[2] "An accused is entitled to confront and cross-examine the witnesses against him, ..."
[3] "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ..."